UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KINGVISION PAY-PER-VIEW LTD.,
as Broadcast Licensee of the May 14, 2005
Wright/Trinidad Program,

                Plaintiff,                 **REPORT AND**
                                                      **RECOMMENDATION**
                                                      CV-06-2518 (NGG) (JMA)

      -against-


JOSE B. HERUQUDEZ a/k/a JOSE B.
HERNANDEZ, Individually and as officer,
director, shareholder and/or principal of MI
PATRIA SUPERMARKET, INC. d/b/a/ MI
PATRIA MARKET and MI PATRIA
SUPERMARKET, INC. d/b/a MI PATRIA
MARKET


                Defendant.
----------------------------------------------------------------X

A P P E A R A N C E S:

      Julie Cohen Lonstein
      1 Terrace Hill
      PO Box 351
      Ellenville, NY 12428
      *Attorney for Plaintiff*

**AZRACK, United States Magistrate Judge:**

By order dated December 29, 2006 the above captioned matter was referred to me by the Honorable Nicholas G. Garaufis, United States District Judge, pursuant to 28 U.S.C. § 636(b), for a report and recommendation to determine plaintiff's motion for a default judgment against defendant JOSE B. HERUQUDEZ, individually and as an officer, director, shareholder and/or

1

principal of Mi Patria Supermarket for alleged violations of the Cable Communications Policy Act, and to determine the scope of plaintiff's relief, including damages, attorney's fees, and costs.

For the reasons set forth below, I respectfully recommend that plaintiff's motion for a default be granted and judgment be entered against defendant in the amount of $7,361.50, reflecting $1,000.00 in statutory damages, $5,000.00 in enhanced damages, and $1,361.50 in attorney fees and costs.

## I. BACKGROUND

Plaintiff Kingvision Pay-Per-View Ltd. ("Kingvision") is a Delaware corporation that markets and licenses the viewing of boxing events on a pay-per-view basis. (Compl. ¶¶ 5, 15.) Kingvision was a broadcast licensee of the Wright/Trinidad professional boxing event ("the Event") on April 17, 2004. (Compl. ¶ 15.) Plaintiff expended funds to obtain rights to distribute the Event and contracted with various commercial establishments in New York State to broadcast it. (Id. ¶ 16.)

Defendant is the owner and/or operator of Mi Patria Supermarket ("Mi Patria"), located at 4118 Junction Boulevard, Jackson Heights, New York 11368. (Id. ¶¶ 7,10.) Plaintiff alleges that defendant procured or received access to the Event without authorization or consent and displayed it to patrons at his market. (Id. ¶ 19.) The transmission of the Event was electronically coded ("scrambled") to protect its access from those who did not pay or properly obtain a license for its viewing. (Pl.'s Memo. of Law ("Pl.'s Memo.") 2.)[1] For a fee, a commercial establishment could receive an unscrambled signal and display the Event to its patrons. (Id.) The licensing fee to

---

[1] There are no page numbers included in plaintiff's submissions. Therefore, this Court will cite to the number assigned by the Eastern District of New York's ECF (electronic court filing) system.

legitimately purchase the Event was $12.50 per patron based on fire code occupancy, plus a $200.00 authorization fee. (Pl.'s Aff. for Default ("Pl.'s Aff."), Ex. B.)

On the night of the Event, Andrew Mangino, an investigator for plaintiff, visited Mi Patria at approximately 9:15 p.m. (Pl.'s Aff., Ex. D.) Mangino observed one television showing the Event with approximately five patrons present. (Id.) Defendant had not contracted with plaintiff to broadcast the Event, nor was it otherwise authorized to do so. (Compl. ¶ 6.) Plaintiff asserts that because defendant was not authorized to display the Event, the only way it could have been shown at Mi Patria was if illegal means were employed. (Compl. ¶¶ 8, 10.) Had the defendant legally paid to show the Event, he would have paid a total of $575.00, (representing a $200.00 authorization fee, plus $12.50 multiplied by the fire code capacity of 30 persons.) (See Pl.'s Aff., Ex. B.)

Plaintiff commenced the instant action on May 23, 2006, alleging violations of the Cable Communications Policy Act, 47 U.S.C. §§ 553 and 605. Defendant was served with copies of the summons and complaint, but failed to answer or otherwise move with respect to the complaint and the time to do so has expired. As a result, a notation of default was entered by the Clerk of the Court on October 2, 2006. On December 29, 2006, Judge Garaufis referred this matter to me for a report and recommendation to determine plaintiff's motion for a default judgment and conduct a damages inquest.

## II. DISCUSSION

**A.     Default**

Defendant's default is deemed an admission of liability and all the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (recognizing that the factual

allegations in the complaint, except those relating to damages, are deemed true after default). Defendant has thus admitted to the use of unauthorized means to intercept coded and scrambled cable transmissions.

Plaintiff, however, must prove damages before the entry of a final default judgment. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). In order to facilitate this, the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. See Transatlantic Marine, 109 F.3d at 108. Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper." However, the Second Circuit has held that "it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (citation and internal quotations omitted). Kingvision's submission to the Court includes affidavits and documentary evidence that provide a basis for a default judgment. Accordingly, no hearing is required.

**B.     Damages**

Plaintiff seeks statutory damages for defendant's violations of the Cable Communications Policy Act, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a), as well as enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). The court has discretion in assessing the amount of damages under these provisions. See Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997).

**1.      Statutory Damages**

Plaintiff seeks damages for defendant's violations of 47 U.S.C. §§ 553(a)(1) and 605(a). Section 553(a)(1) prohibits persons from intercepting or receiving "any communications service offered over a cable system, unless specifically authorized to do so . . . ." 47 U.S.C. § 553(a)(1). Section 605 proscribes the unauthorized interception and publication of any "radio communication." 47 U.S.C. § 605(a). "Courts within the Second Circuit have held, 'The unauthorized interception of any cable television programming services which originate and are delivered via satellite or by other means of over-the-air signal transmission is a violation of'" both these sections. Cablevision Systems New York City Corp. v. Andrew, No. 04 CV 510, 2006 WL 2792764, at *3 (E.D.N.Y. Sept. 26, 2006) (citing Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996)).

Where a defendant admits to violating both sections, a plaintiff may elect to recover damages under § 605, which provides for greater recovery than § 553. See Sykes, 75 F.3d 123, 131 n.5 (2d Cir. 1996). Section 605 states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, instead of actual damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II). As a result of defendant's default, Kingvision has been unable to ascertain the extent of defendant's violations. Therefore, plaintiff has elected to recover statutory damages.

Section 605 provides that a court may award an aggrieved party statutory damages of "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). The court has discretion to determine the number of violations and assess damages for each violation. Id. Although the statute does not clearly define "violation," "most cases applying the statute in a commercial context have interpreted the showing of an event on a single night as one violation." Garden City Boxing Club, Inc. v. Perez, No. 05 CV 3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006).

"Although § 605 provides little guidance as to how to set damages within the statutory range, courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events." Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 63 (E.D.N.Y. 2006) (citations and internal quotation marks omitted). Some courts multiply the number of patrons present at the unauthorized broadcasting by a specific dollar amount, typically the residential charge for the pay-per-view event being shown. See, e.g., Taco Rapido Rest., 988 F. Supp. at 111 (awarding statutory damages of $50.00 per patron); Cablevision Systems Corp. v. 45 Midland Enterprises, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same). This per-patron valuation "is based on a theory of rough justice that the patrons viewing the event without access to the unauthorized showing would have ordered it themselves . . . . Plaintiff is thus fully compensated for any loss it suffered, and by divesting the defendant of any profits, it assures that defendant reaps no benefit from unlawful action." J & J Sports Productions, Inc. v. Drake, No. 06 CV 246, 2006 WL 2927163, at *3 (E.D.N.Y. Oct. 11, 2006) (quoting Time Warner Cable of New York City v. Googies Luncheonette, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). In the instant case, the residential rate to subscribe to the Wright/Trinidad fight was set at $25.00 to $50.00. (Pl.'s Aff. ¶ 10.)

Alternatively, courts have awarded a flat amount when considering the unauthorized receipt and broadcast of a pay-per-view program by a commercial establishment. See, e.g., Top Rank, Inc. v. Ortiz, No. 01 CV 8427, 2003 WL 1960211, at *3 (S.D.N.Y. Mar. 27, 2003); Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003); Entertainment by J & J, Inc. v. Suriel, No. 01 CV 11460, 2003 WL 1090268, at *1 (S.D.N.Y. May 11, 2003) (awarding $11,000 in statutory damages); Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding damages "based on the Court's view of the equities and not the estimate of the number of patrons").

Courts generally consider the following factors in assessing damages: "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." Kingvision Pay-Per-View Ltd. v. Palaguachi, No. 06 CV 2509, 2007 WL 42994, at *3 (E.D.N.Y. Jan. 3, 2007) (citing cases). Deterrence is also a pertinent consideration. See, e.g., Sykes, 75 F.3d at 132 (quoting 130 Cong. Rec. S14285 (daily ed. Oct. 11, 1984) (statement of Sen. Packwood)). As defendant has not made an appearance in the instant action, there is no information available about his financial resources, needs, or earning ability. Moreover, there is no evidence of the kind of burden that will be imposed on him upon judgment.

There are a number of components to the pecuniary loss suffered by plaintiff, including lost sublicense fees and loss of goodwill. (Pl.'s Aff. 11, 4; Compl. ¶ 37) Kingvision invests substantial time and money annually promoting boxing broadcasts. Foremost, it is clear that plaintiff lost the commercial licensing fee that it would have been entitled to had defendant entered into an authorized agreement to broadcast the Event. In addition, but for defendant's unauthorized broadcast of the Event, some or all of the patrons of Mi Patria may have become paying patrons either at their residence or at an authorized commercial establishment. "Moreover, defendant's display of the Event likely increased the number of patrons, and subsequently heightened the profits from meals and/or drinks purchased while viewing the Event, in a way that was financially detrimental to the plaintiff and its legitimate customers." Kingvision Pay-Per-View, Ltd. v. Mendez, No. 03 CV 2170, 2006 WL 3833014, at *4 (E.D.N.Y. Dec. 28, 2006).

If the often-used "residential rate times per-patron" formula is applied in the instant case, the amount of statutory damages would be $250.00 ($50.00 per each of the 5 observed patrons). This

7

result is less than the $1,000 minimum amount of authorized statutory damages, and less than the fee defendant should have paid to legally show the Event. A more appropriate award is at least that which defendant should have paid to legally show the Event, which would have been $575.00. (See Pl.'s Aff., Ex. B.) Thus, I recommend that plaintiff be awarded statutory damages in the amount of $1,000, the statutory minimum.

**2.     Enhanced Damages**

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605 (e)(3)(C)(ii), which provides for enhanced damages if the violation was committed willfully and for commercial advantage or private financial gain. Such damages may not exceed $100,000 for each violation. 47 U.S.C. § 605 (e)(3)(C)(ii). Willfulness is defined as "disregard for the governing statute and an indifference for its requirements." Cablevision Sys. N.Y. City Corp. v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985)). It is established by the fact that a pay-per-view event is broadcast without authorization. Time Warner Cable of New York City v. Googies Luncheonette, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Such willfulness is present here. Defendant never contracted for the right to broadcast the Event. In order to receive the Event, someone connected to Mi Patria must have engaged in a deliberate, unlawful act. In addition, the Court may draw an inference of willfulness from defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. Kingvision Pay-Per-View Ltd. v. Cazares, No. 05 CV 2934, 2006 WL 2086031, at *4 (E.D.N.Y. July 25, 2006) (citing Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)).

Courts use a variety of factors in determining whether a defendant's willful conduct justifies

enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) any advertisement of the broadcast; and (4) whether defendant charged an admission fee or premiums for food and drinks. See Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec y Caridad, Inc., No. 01 CV 6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001). Courts also consider the plaintiff's actual damages. Id. In this case, Kingvision seeks the maximum increased award of $100,000, but has offered no evidence that defendant has pirated events other than the Wright/Trinidad fight, made substantial monetary gains, advertised the broadcast, or charged a premium on food and drinks.

In light of the circumstances surrounding the display of the Event, I recommend that enhanced damages be awarded in the amount of $5,000.00 for defendant's willful violation of the statute. Because defendant is a supermarket rather than a bar or restaurant, it is doubtful that it derived increased revenue by showing the pirated boxing event. Therefore, this amount is fair and reasonable. See, e.g., Kingvision Pay-Per-View, Ltd. v. Mendez, No. 03 CV 2170, 2006 WL 3833014, at *4 (E.D.N.Y. Dec. 28, 2006) (awarding $10,000 in enhanced damages against a bar which broadcast a boxing match without authorization); Kingvision Pay-Per-View, Ltd. v. Body Shop, No. 00 CV 1089, 2002 WL 393091, at *4 (S.D.N.Y. Mar. 13, 2002) (same). Furthermore, $5,000.00 will be a deterrent in preventing future violations.

**C.     Attorney's Fees and Costs**

**1.     Attorney's Fees**

As the prevailing party, plaintiff is entitled to an award of reasonable attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). Under the "lodestar" method, fees are determined by taking "the number of hours reasonably expended on the litigation [multiplied] by a reasonable hourly

9

rate." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Kerin v. U.S. Postal Service, 218 F.3d 185, 190 (2d Cir. 2000). Reasonable hourly rates are determined by reference to "the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994). To receive such fees, plaintiff must present time records to substantiate its fee request. See New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Such time records must be contemporaneous and indicate "for each attorney, the date, the hours expended, and the nature of the work done." Id. at 1148.

Attorney Julie Cohen Lonstein has submitted an affidavit setting forth the total attorney's fees and itemizing the work done, hours expended, and the amount due. "Courts recognize that attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy" the requirement. J & J Sports Productions, Inc. v. Drake, No. 06 CV 246, 2006 WL 2927163, at *6 (E.D.N.Y. Oct. 11, 2006) (citing David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991)). A total of 3.12 attorney hours were spent on this litigation at a rate of $200.00 per hour, and a total of 2.50 paralegal hours were spent at a rate of $75.00 per hour. (Att'y Aff. of Costs and Fees ¶ 4.) During this time, Ms. Lonstein and her paralegal researched and developed the case, drafted the summons and complaint, and prepared the default motions and inquest papers, among other tasks. (Id.) I find Ms. Lonstein and her paralegal's hourly rates to be reasonable. Therefore, I recommend an award of $811.50 in attorney's fees.

**2.     Costs**

Kingvision also seeks reimbursement for costs in the amount of $550.00, which represents the court filing fees and service of process costs. (Att'y Aff. of Costs and Fees ¶ 3.) These costs

are supported by documentary evidence and they are reasonable. Kingvision Pay-Per-View Ltd. v. Cazares, No. 05 CV 2934, 2006 WL 2086031, at *6 (E.D.N.Y. July 25, 2006). Therefore, I recommend that costs in the amount of $550.00 be awarded to plaintiff.

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff be awarded $1,000.00 in statutory damages, $5,000.00 in enhanced damages, and attorney's fees and costs of $1,361.50. Thus, judgment should be entered against the defendant in the amount of $7,361.50.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1) (2000); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: April 26, 2007
       Brooklyn, New York

                                           /s/
                                        JOAN M. AZRACK
                                        UNITED STATES MAGISTRATE JUDGE

Copy also sent to:

Jose B. Heruqudez
47-25 98th Street
Corona, NY 11368
*Defendant*